**UNITED STATES of America, Plaintiff,**

v.

**Jerry Dale LAMBERD, Defendant.**

**Crim. A. No. 22891–3.**

United States District Court, W. D. Missouri, W. D.

June 12, 1970.

**1364**

Paul Anthony White, Asst. U. S. Atty., Kansas City, Mo., for plaintiff.

John R. Whitsitt, Kansas City, Mo., for defendant.

MEMORANDUM FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT OF ACQUITTAL OF DEFENDANT

BECKER, Chief Judge.

By indictment defendant was charged with refusing to submit to induction into the Armed Forces of the United States in violation of Section 462(a), Title 50-App., United States Code. It is undisputed that defendant was classified as I–A by his Local Board (Number 84 of Kansas City, Kansas), and that he reported to the Induction Center in Kansas City, Missouri, in response to an order from his Local Board; and that, after being found physically and mentally qualified for service in the Armed Forces of the United States, defendant willfully refused to take a step forward or take the oath of induction as ordered.

At the trial of this cause, Colonel Junior L. Elder, State Director of the Kansas Selective Service System, identified defendant's Selective Service file from the records of Local Board Number 84 of Kansas City, Kansas. This file revealed the following:

■ Defendant first registered with Local Board Number 84 on September 22, 1966, shortly after his eighteenth birthday. He was classified I–A by a 2–0 vote of the Local Board on January 12, 1967. Thereafter, on December 6, 1967, he was ordered to report for a physical examination. He reported for the examination on December 22, 1967, and was found "acceptable" for service in the Armed Forces. On December 29, 1967, he was informed by the Local Board on DD Form 62 that he was acceptable. Thereafter, on January 3, 1968, at defendant's request, SSS Form 150 (Special Form for Conscientious Objector) was "given to registrant for immediate return." Defendant returned the form to the Board on January 8, 1968. Therein, in describing the "basis of his belief," as required by the form, defendant stated as follows:

"I believe in neutrality. God created man to populate the earth not distroy (sic) it. I do believe in a Supreme Being."

Defendant apparently made no response to the item on the form requiring a statement of "whether or not your belief in a Supreme Being involves duties which to you are superior to those arising from any human relation." The inquiry in respect of "from what source you received the training and acquired the belief which is the basis of your claim" elicited the following from defendant:

"The source of my knowledge is from studies from the Bible in the past and the study of God."

Defendant further stated in the form that he believed in the use of force only

"in the protection of my family and myself"; that "incidental speaking and reguralar (sic) Bible study" most conspicuously demonstrated the consistency and depth of his religious convictions; that he was not a member of any religious sect or organization; and that the following were "persons who could supply information as to the sincerity of your professed convictions against participation in war":

C. L. Lamberd, 1635 Holt, Kansas City, Kansas "Instructor", Brother [of defendant]

Rollin Domeriz, 4528 Tracy, Kansas City, Mo., "Computer Service", "Representative"

Mary Lamberd, 1635 Holt, Kansas City, Kansas "Housewife", sister in law

Mrs. R. Campbell, 3029 Charlotte, Kansas City, Missouri, "Housewife", mother [of defendant]

Thereafter, on January 18, 1968, by a vote of 3 to 0, the Local Board again classified defendant I–A. The minutes of the Local Board state that SS Form 110 (Notice of Classification) and SSS Form 217 (Advice of Right to Personal Appearance and Appeal) were mailed to defendant on January 26, 1968. SSS Form 110 (Notice of Classification), however, is omitted from defendant's Selective Service file. SSS Form 217 reads as follows:

"Enclosed is your Notice of Classification (SSS Form 110). Your right to ask for a personal appearance within 30 days is prescribed on the reverse side of that Notice of Classification.

"Each local board has available a Government Appeal Agent to aid you with a personal appearance, an appeal, or any other procedural right. The Appeal Agent or his representative will give you legal counsel on Selective Service matters only at no charge.

"If you should desire a meeting with him, this office will arrange a time and place for such meeting upon request."

The minutes of the Local Board then show that, on February 2, 1968, defendant made a "request for meeting with Mr. Weeks." A later letter of defendant's attorney (dated October 10, 1968) to the Assistant United States Attorney (which letter has been made a part of the Selective Service file) stated the following with regard to petitioner's intent to appeal the I–A classification made January 18, 1968:

"Mr. Lamberd has related to me that after he received his classification card (SSS Form 110) and the Advice of Right to Personal Appearance and Appeal (SSS Form 217) that he appeared in person at Local Board 84 for the express purpose of appealing the classification. Mr. Lamberd states that he signed a scrap of paper given him by the lady there on which was placed the words 'I appeal', followed by his signature and his selective service number. He further states that he was then told about the Government Appeal Agent and his right to consult with such person, and was advised that such procedure was advisable and that the Appeal Agent would help him with the appeal he had filed. Mr. Lamberd acquiesced therein and then signed another scrap of paper requesting such help with his appeal."

Defendant's notice of appeal, however, is omitted from his Selective Service file. The only record representing the personal appearance of defendant before the Local Board was the following note, written in defendant's own hand:

"Dear Sir:

I Jerry Lamberd wish to make an appointment with the Appeal Agent at any convenyent (sic) date."

Thereafter, defendant was granted an appointment with the Government Appeal Agent on February 19, 1968. Defendant testified in the trial in this Court that he sought this appointment because he was "not satisfied" with the information which he had given to the Local Board on SSS Form 150; that he

attempted to give the Appeal Agent more complete and updated information on the current condition of his status as a conscientious objector; that the Appeal Agent took notes, the substance of which defendant was not aware of and which notes defendant did not see; that he was not aware the notes would be made the subject of a later report by the Appeal Agent; and that the interview concluded with the Appeal Agent's announcing to defendant that "[y]ou're going to have to change your ways or go to jail." [1] The Selective Service file shows that on the same date, the Appeal Agent forwarded the following report of the interview to the Local Board:

"Gentlemen:

The above subject came to my office on Monday, February 19, 1968, at 9:30 a. m. pursuant to his request and the notice and appointment which was made. The subject stated that he had made application to your Board for a 1–O classification (conscientious objector), which apparently was refused. He bases his claim for this classification upon the fact that he believes that serving his country in any capacity would be putting his country ahead of God. He is not a member of Jehovah's Witnesses, but claims to be 'studying' under his brother, Clarence Lee Lomberd (sic), who is 25 years of age and lives at the same address as the subject. He claims that he attends meetings of this body about once a week although he hasn't attended any lately 'for about a month'. He says that he is a roofer by occupation and that he is generally too tired to attend the meetings. In addition to this, he is having 'girlfriend' trouble. He says that this stems from the fact that more than one of them wants to marry him.

"He claims to have taken an appeal from the action of the Selective Service Board in refusing to classify him as I–O but I told him that in order to be completely sure of this, he should file a written notice of appeal if he intends to take an appeal."

The minutes of the Local Board state that the letter of the Appeal Agent was received by it on February 20, 1968, and that "no appeal has been received." On March 19, 1968, SSS Form 252 (Order to Report for Induction) was mailed to defendant. On April 1, 1968, defendant reported to the induction center but refused induction. Subsequently, prosecution of defendant was commenced in Division 2 of this District Court in Criminal Action No. 22675–2. Counsel for defendant moved to dismiss that action on the ground that defendant should be allowed to appeal his I–A classification to the state Appeal Board. Upon agreement of the United States Attorney for the Western District of Missouri that he had "no objection to the [Local Board's] reviewing the conscientious-objector application or processing of Jerry Dale Lamberd and the matter given complete and appropriate due process of law," that prosecution was dismissed. On November 1, 1968, the Order to Report for Induction on April 1, 1968, was cancelled by authority

---

1. The Government objected to the admissibility of defendant's testimony in respect of the development of his conscientious objector status generally and testimony in respect of what he stated to the Appeal Agent in particular as irrelevant to the issues in this cause. It is apparently the Government's contention that, in reviewing the determination of the Selective Service System to classify defendant I–A, this Court is restricted to the information in the file. But it is settled that, in cases in which it is an issue whether the Board should have reopened a registrant's classification, evidence of what information the registrant gave the Board would be admissible in judicial proceedings. See Reisner, The Conscientious Objector Exemption: Administrative Procedures and Judicial Review, 35 Chicago L.Rev. 686, 696; United States v. Gearey (C.A.2) 368 F.2d 144, on remand (S.D.N.Y.) 266 F.Supp. 161, aff. 379 F.2d 915, cert. den. 389 U.S. 1010, 88 S.Ct. 335, 19 L.Ed.2d 368, reh. den. 389 U.S. 1010, 88 S.Ct. 561, 19 L.Ed. 2d 611. By the same reasoning, evidence of what the defendant told the Appeal Agent would be admissible in the case at bar.

of the State Director and defendant's file was returned to the State Appeal Board for the purpose of its considering defendant's appeal. The minutes of the Local Board then show that defendant was classified I–A by 5–0 vote of the Appeal Board on January 28, 1969; and that SSS Form 110 (Notice of Classification) was mailed to the registrant. The file, however, does not contain any copy of the SSS Form 110 which was sent to defendant. Subsequently, defendant was again ordered to report for induction on March 7, 1969.[2] Again, defendant reported to the induction center but refused to be inducted. The indictment in this case is based on that refusal to be inducted.

This case was tried in a plenary evidentiary hearing without a jury with the consent of the parties.

██ The defendant is entitled to a judgment of acquittal because (1) the Selective Service file contains no "basis in fact" for the Selective Service System's denial of conscientious objector status to defendant and (2) the defendant was not granted due process of law by being granted an effective appeal from the adverse determination of the Local Board.

██ It is well settled that the scope of review of draft board determinations is "one of the most restricted known to our law." United States v. St. Clair (E.D.N.Y.) 293 F.Supp. 337, 1. c. 341; Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567. It is well settled that there must be a "basis in fact" for the Selective Service Board's I–A classification, if the registrant presents a *prima facie* case bringing himself within a class excepted from that classification. Estep v. United States, *supra*; Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428; Blalock v. United States (C.A. 4) 247 F. 2d 615; Goff v. United States (C.A. 4) 135 F.2d 610; Roberson v. United States (C.A. 10) 208 F.2d 166; Tomlinson v. United States (C.A. 9) 216 F.2d 12, cert. den. 348 U.S. 970, 75 S.Ct. 528, 99 L.Ed. 755. As stated in Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L. Ed. 132, the burden is on the registrant to state facts which would, if true, entitle him to be excepted from I–A classification. Once such facts have been stated or shown to the Local Board, a basis in fact for any denial of the exception must appear from the record:

> "The task of the courts in cases such as this is to search the record for some affirmative evidence to support the local board's overt or implicit finding that a registrant has not painted a complete or accurate picture of his activities. * * *

2. In the trial herein, defendant also raised the ground of his wife's pregnancy as a possible basis of exemption and for reopening his I–A classification. In this regard, the evidence adduced at trial showed that on February 20, 1969, under date of February 9, 1969, the Board received the letter of Dr. Lee E. Davidson stating that defendant's wife was pregnant. This was after the issuance of the order to report for induction on February 17, 1969. Subsequently on May 28, 1969, defendant reported the birth of the child at the Local Board office. It is admitted that defendant knew of the pregnancy of his wife well in advance of the letter of Dr. Davidson in February 1969, but did not report it to the Local Board. The Board declined to reopen the I–A classification of defendant for this reason on the basis of Selective Service Regulation 1625.1, permitting re-openings after the issuance of the order to report for induction only in cases where the cause arose thereafter and was beyond the control of the registrant. Defendant contends that it was a denial of due process for the Board not to reopen the I–A classification for this cause, citing United States v. Walsh (D.Mass.) 279 F.Supp. 115, and United States v. Bruinier (D.Ore.) 293 F.Supp. 666, for the principle that the Board was obligated to reopen the case upon gaining knowledge of defendant's wife's pregnancy. *Walsh*, however, simply restates the rule that a *prima facie* case of exemption requires reopening. In *Bruinier*, it is stated that fatherhood entitles one a III–A deferment under 32 C.F.R. 1622.30(a), 1625.2. But defendant in this case did not meet the fatherhood standard when he notified the board of the pregnancy.

"Local boards are not courts of law and are not bound by traditional rules of evidence; they are given great leeway in hearing and considering a variety of material as evidence. If the facts are disputed the board bears the ultimate responsibility for resolving the conflict—the courts will not interfere. Nor will the courts apply a test of 'substantial evidence.' However, the courts may properly insist that there be some proof that is incompatible with the registrant's proof of exemption. * * * [W]hen the uncontroverted evidence supporting a registrant's claim places him prima facie within the statutory exemption, dismissal of the claim solely on the basis of suspicion and speculation is both contrary to the spirit of the [Military Service] Act and foreign to our concepts of justice." Dickinson v. United States, *supra*, 346 U.S. at 397, 74 S.Ct. at 157.

It is apparent from the above quotation of the material submitted by defendant on SSS Form 150 that he stated a *prima facie* claim of conscientious objector status. He stated in substance that he was opposed to war because of his belief in God and by virtue of his study of the Bible and of God. These claims are sufficient to state a *prima facie* claim as a conscientious objector under Section 456(j), Title 50–App., U.S.C., which defines a conscientious objector as one "conscientiously opposed to war in any form by reason of religious training and belief." Defendant stated that his opposition to violence was qualified only in that he would use violence in defense of

his family or himself. This statement does not disqualify defendant as a conscientious objector. United States v. Lauing (C.A. 7) 221 F.2d 425; United States v. Gearey (C.A. 2) 379 F.2d 915, cert. den. 389 U.S. 959, 88 S.Ct. 335, 19 L.Ed.2d 368, reh. den. 389 U.S. 1010, 88 S.Ct. 561, 19 L.Ed.2d 611. Defendant also admitted that he was not a member of any religious faith. But membership in a religious faith is neither required by the controlling statute, Section 456(j), *supra*, nor a requirement of the conscientious objector status recognized by statute. United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733; United States v. James (C.A. 4) 417 F.2d 826, and cases therein cited. Furthermore, defendant effectively stated his opposition to war in any form and the source of such opposition in religious training. Defendant's statements considered together constituted a *prima facie* claim that defendant was a conscientious objector. United States v. Seeger, *supra*; United States v. Corliss (C.A. 2) 280 F.2d 808, cert. den. 364 U.S. 884, 81 S.Ct. 167, 5 L.Ed.2d 105. His profession of belief as a conscientious objector, without more, is entitled to persuasive weight. United States v. Haughton (C.A. 9) 413 F.2d 736, 739 et seq. "[I]n the case of a conscientious objector who has made a prima facie case, the Local Board must build a record tending to disprove this prima facie case, or, at the very least, provide a 'basis in fact' for such disbelief." United States v. St. Clair, *supra*, 293 F.Supp. at 345; Batterton v. United States (C.A. 8) 260 F.2d 233.[3] The

---

3. In United States v. St. Clair, *supra*, 293 F.Supp. at 344–345, is contained the following thorough analysis of the burden of proof in Selective Service cases:

"BURDEN OF PROOF
ON SINCERITY

"The Local Board predicated its decision, at least in part, upon a failure of the defendant to maintain his necessary burden of proof. Presumably this lack was with respect to sincerity.

"The registrant bears the burden of establishing *prima facie* compliance with the requirement that he sincerely

be conscientiously opposed, as a matter of religious training and belief, to participation in war of any kind. 32 C. F.R. § 1623.2; United States v. Carroll, 398 F.2d 651 (3d Cir. 1968); United States v. Corliss, 280 F.2d 808, 815 (2d Cir.), cert. denied, 364 U.S. 884, 81 S.Ct. 167 [5 L.Ed.2d 105] (1960). Once such a case has been made, the Selective Service System has the burden of showing something in the record supporting a denial. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955); Dickinson

record before the Local Board contains no basis in fact for lack of belief of defendant's claim.

 Although the Local Board apparently reopened[4] defendant's case and apparently reconsidered his I–A classifica-

v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953); United States v. Corliss, 280 F.2d 808 (2d Cir.), cert. denied, 364 U.S. 884, 81 S.Ct. 167 [5 L.Ed.2d 105] (1960); Batterton v. United States, 260 F.2d 233 (8th Cir. 1958).

"The Supreme Court in Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953), held that where a registrant who claimed a ministerial exemption made a *prima facie* case, the Local Board must grant the requested classification in the absence of information tending to disprove the assertions of the registrant. In Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955), the Supreme Court noted that a request for classification as a conscientious objector was then not governed by precisely the same rules as those governing ministerial exemptions. The court nevertheless did suggest that much the same burdens exist:

" 'Since Witmer stated his beliefs with apparent sincerity, and since we find no indication anywhere in the record that his demeanor appeared shifty or evasive or that his appearance was one of unreliability, we must examine the objective facts before the Appeal Board to see whether they cast doubt on the sincerity of his claim.' Id. at 382, 75 S.Ct. at 396.

"We may assume for the purposes of this case, without deciding, that unlike courts, a draft board may decide an issue of fact through the probative force of negative credibility. But cf. Pariso v. Towse, 45 F.2d 962, 964 (2d Cir. 1930) (L. Hand: 'a party must produce affirmative proof); Hudiburgh v. Palvic, 274 S.W.2d 94, 99 (Tex.Civ.App.1954); Maniscalco v. Director, etc., 327 Mass. 211, 216, 97 N.E.2d 639, 642 (1951); Boice-Perrine Co. v. Kelley, 243 Mass. 327, 329–330, 137 N.E. 731, 732 (1923); Wallace v. Berdell, 97 N.Y. 13, 21 (1884); Kirby v. Delaware & H. Canal Co., 20 App.Div. 473, 476, 46 N.Y.S. 777, 780 (3d Dep't 1897). For example, when a registrant says 'I believe in God,' because he is shifty eyed or hesitates or his palms sweat, the Local Board may, for argument's sake, decide he is lying and his utterance means 'I do not believe in God.' But there is not the slightest suggestion in the record in

this case that demeanor evidence was so relied upon by the Local Board. We may further assume, without deciding, that the single member of the Board who observed the registrant at his 'hearing' could report this demeanor observation to other members of the Board. Cf. DeRemer v. United States, 340 F.2d 712, 716–717 (8th Cir. 1965) ('may properly use subordinates in information-gathering'). There is no such indication of such a report on this record. And, since the Appeal Board decided the case solely upon the written record, there is no basis at all for assuming that it considered the registrant's demeanor. See Witmer v. United States, 348 U.S. 375, 382, 75 S.Ct. 392, 396, 99 L.Ed. 428 (1955).

"The Second Circuit in United States v. Corliss, 280 F.2d 808 (2d Cir.), cert. denied, 364 U.S. 884, 81 S.Ct. 167 [5 L.Ed.2d 105] (1960) recognized the problem presented by a classification based solely upon disbelief of the registrant's sincerity. The Court pointed out that:

" 'It would seem to follow that although denial of exemption may be and often is supported by objective facts inconsistent with the claim, denial may also rest on a disbelief in the sincerity of the claim, unaccompanied by any inconsistent facts, provided the disbelief is honest and rational.' Id. at 814. Unfounded assumptions by the Appeal Board or Court as to the demeanor of the registrant are not, however, an 'honest and rational' basis for decision. Id.

"In Batterton v. United States, 260 F.2d 233 (8th Cir. 1958), the Eighth Circuit seemed to assume that unstated demeanor factors could not support a Local Board's finding. It held that in the case of a conscientious objector who has made a *prima facie* case, the Local Board must build a record tending to disprove this *prima facie* case, or, at the very least, provide a 'basis in fact' for such disbelief."

4. The record leaves some question whether defendant's classification was reopened. Although the Local Board met and voted (3–0) to "classify" (rather than "reclassify") petitioner I–A, no hearing was held and there is no other showing in the file that the case was in any sense reopened. Thus, the new vote of the Board on January 18, 1968,

tion after receipt of his Conscientious Objector form, they "built no record", even informally, tending to disprove the *prima facie* case nor did they provide a "basis in fact" for rejecting the conscientious objector claim. Nothing appears from the defendant's own statements in the record of the Local Board to indicate that he was insincere. Further, "[m]ere disbelief [is] not enough * * * there must be some affirmative evidence to support the rejection of the claimed exemption, or something in the record which" casts substantial doubt on his sincerity or the genuineness of the claim. Batterton v. United States, *supra,* 260 F.2d at 233. Nothing in defendant's statements in his SSS Form 150, which constitutes the entirety of the record on this issue, supports any determination adverse to him. Salamy v. United States (C.A. 10) 379 F.2d 838, relied on by the government, is easily distinguishable, and may not be presently viable. The rule of the *Salamy* case has been severely limited by recent holdings to the effect that, if a registrant raises his claim promptly after it matures by a proper means, he is entitled to have his classification reconsidered. Vaughn v. United States (C.A. 8) 404 F.2d 586; United States v. Sandbank

(C.A. 2) 403 F.2d 38, cert. den. 394 U.S. 961, 89 S.Ct. 1301, 22 L.Ed.2d 562. This has been held to be the rule, even in cases wherein the registrant had received his notice of classification prior to his assertion of his claim. United States v. Sandbank, *supra*; United States v. Bornemann (C.A. 2) 424 F.2d 1343; United States v. Gearey, *supra*; Porter v. United States (C.A. 7) 334 F.2d 792; Keene v. United States (C.A. 10) 266 F.2d 378. Further, in a recent case, the Eighth Circuit Court of Appeals has held that "when a registrant makes application at the time when his beliefs become 'relevant' to his classification, then lateness of the claim cannot affect the registrant's sincerity." United States v. Abbott (C.A. 8) 425 F.2d 910 (April 28, 1970). See also United States v. Stone (C.A. 10) 422 F.2d 968.

The "evidence" presented by the Appeal Agent (and apparently considered by the Appeal Board when it affirmed that I–A classification of defendant) cannot be considered as a basis in fact for rejection of his conscientious objector claim in favor of his I–A classification. To consider this information submitted *ex parte* is unauthorized by the current statute[5] and may be a denial

---

may as well have been a refusal to reopen as a reclassification. In a conscientious objector case, however, as contrasted with a ministerial exemption claim, the standards for reopening are much the same as the "basis in fact" standard. A registrant stating a *prima facie* case of conscientious objection is entitled to have his classification reopened. Vaughn v. United States (C.A. 8) 404 F.2d 586; United States v. Sandbank (C.A.2) 403 F.2d 38, cert. den. 394 U.S. 961, 89 S.Ct. 1301, 22 L.Ed.2d 562. Conceivably, the Board can refuse to reopen a classification because of a reasonable disbelief of one of the elements necessary to state a *prima facie* case. But as noted in the body of this memorandum, the disbelief must be "rational" or "reasonable," and, under the authority followed in the Eighth Circuit, the disbelief must have some objective basis in the record. Thus, it seems, absent some inconsistency or admission in the registrant's own statements to the

Board (and their timing) from which a disbelief can reasonably be concluded, the Board must conduct a hearing even in order to provide itself with a basis for a refusal to reopen. (In determining what can be reasonably concluded from registrant's statements supporting a claim for exemption, it would appear that the statements should be viewed in the light, consistent with logic, most favorable to the registrant.) It has been noted that the right to a personal appearance is the indicia of a reopening (see Mulloy v. United States, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362), but the right was not clearly granted or exercised in this case.

5. Although the Department of Justice's role in Selective Service Proceedings was eliminated under the Military Service Act of 1967, it has been speculated that the requirements of due process in respect of reports and summaries survive under the new Act. See Reisner, op. cit. *supra,*

of due process. See In re Weitzman (C.A. 8) 426 F.2d 439; United States v. Cummins (C.A. 8) 425 F.2d 646.

It should be noted in this connection that it has been held that the conclusions of a hearing officer or other interviewer cannot, without more, constitute a basis in fact for denying the conscientious objector exemption. United States v. Bryant (W.D. Ark.) 293 F.Supp. 922, 933. See also United States v. Abbott, *supra,* where it is said:

> "Prior to the Military Selective Service Act of 1967, 50 U.S.C. App. § 456(j), an appeal board could utilize the personal interview by a hearing officer to assess a registrant's credibility. This provision has now been deleted from the act. * * * Since there is no longer an opportunity for the appeal board to personally interview the registrant, the appeal board's classification must rest solely upon the objective facts within the selective service file itself."

This rule has been recently reaffirmed by the Eighth Circuit Court of Appeals. In re Weitzman, *supra.*

 Furthermore, the adverse conclusions of the Appeal Agent, even if acceptable, are not sufficient to constitute a basis in fact for denial of the exemption. Defendant's statement about his "girlfriend" trouble is irrelevant to any consideration of his conscientious objector status. Further, considered with registrant's other statements, defendant's reported statement that he has not attended Jehovah's Witnesses meetings for over a month because of his business and his resultant weariness are neither inconsistent with his claim of conscientious objection nor a basis for a substantial inference of insincerity. This statement is not inconsistent because, as noted above, formal religious affiliation is not a requirement of conscientious objector status. Neither is lack of religious affiliation a basis for an inference of insincerity, for the same reason, and also for the additional reason that, even in cases where church affiliation has been made an integral part of the registrant's claim, church activities, only "as time permits," are a criterion for gauging sincerity. Maynard v. United States (C.A. 9) 409 F.2d 505. In this case the defendant, according to the Appeal Agent's report, stated that time had not permitted his recent attendance at meetings.

 Finally, the Local Board has not included in the file any statement of their reason or reasons for denying the claim of defendant. The file contains no minutes or summary of what transpired at any meeting of the Local and Appeal

at 700, 712. This is confirmed in the following passage from *St. Clair, supra:*
"Until 1967, when the system was abandoned, a registrant received a measure of protection from the requirement that the Department of Justice investigate and compile an impartial dossier, which could be contradicted. ·50 U.S.C. App. § 456(j), as amended, Pub.L. 90–40, § 1(7) (1967), 81 Stat. 100. See, e. g., United States v. Nugent, 346 U.S. 1, 73 S.Ct. 991, 97 L.Ed. 1417 (1953); Storey v. United States, 370 F.2d 255 (9th Cir. 1966); United States v. Corliss, 280 F.2d 808, 810 (2d Cir.), cert. denied, 364 U.S. 884, 81 S.Ct. 167, 5 L.Ed.2d 105 (1960); Blalock v. United States, 247 F.2d 615, 619 (4th Cir. 1957) ('a special protection for conscientious objectors').

"The purpose of the 1967 change was to reduce delays in the processing of conscientious objectors' claims. Note, Changes in the Draft: The Military Selective Service Act of 1967, 4 Colum. J.L. & Social Problems, 120, 150 (1967). There was no intention to eliminate protections for those claiming conscientious objector status. H.R. Rep. No. 267, 90th Cong., 1st Sess. (1967), 1 U.S.Code Congressional and Administrative News 1348 (1967). Thus, although the scope of review has not changed, the Court must necessarily scrutinize more carefully the record of the Local Board which stands unsupplemented by the Department of Justice.

Boards or any basis relied on by those Boards in denying the registrant's application for exemption. Under the Selective Service Regulations, 32 C.F.R. § 1626.12, a registrant is to be given an opportunity to rebut on his appeal to the Appeal Board the allegedly incorrect conclusions of the Local Board in denying the exemption. This has been held to be "essential to a meaningful appeal." United States v. Purvis (C.A. 2) 403 F. 2d 555. Where no basis-in-fact or inferences upon which the Local Board's conclusion is based is stated, effective rebuttal is impossible. See White, Processing Conscientious Objector Claims: A Constitutional Inquiry, 56 Calif.L. Rev. 652, 674. In United States v. St. Clair (E.D.N.Y.) 293 F.Supp. 337, it was held that such a denial of the right of appeal required the dismissal of the prosecution of the registrant. See also United States. v. James, *supra*, holding that the Local Board must state a "rational basis" for the rejection of the claim; United States v. Houghton (C.A.

9) 413 F.2d 736, 739;[6] O'Brien v. Resor (C.A. 4) 423 F.2d 594; and the recent Eighth Circuit case of United States v. Cummins (C.A. 8) 425 F.2d 646, holding that reasons for the denial should be stated if a basis-in-fact for the denial does not appear from the record. See also United States v. St. Clair, *supra*, 293 F.Supp. at 341–342, as follows:

"A registrant is at least entitled to be told in what way his case is defective so that he has a reasonable opportunity to obtain evidence to support it. United States v. Purvis, 403 F.2d 555 (2d Cir. 1968); DeRemer v. United States, 340 F.2d 712, 718 (8th Cir. 1965) ('endeavoring in good faith to point out exactly what items influenced its opinion and thus to give appellant a fair chance to attack these conclusions'). 'We are dealing here with a question of personal liberty.' Estep v. United States, 327 U.S. 114, 121–122, 66 S.Ct. 423, 427 [90 L.Ed. 567] (1946)."

6. In *Houghton*, the following discussion of "basis-in-fact" in ministerial and conscientious objector cases was contained: "[United States v. Dickinson, *supra*, holding that the record must contain some 'objective evidence' supporting the Board's rejection of an exemption claim] involved a ministerial exemption. Conscientious objection requires a different approach 'because the ultimate question * * * is the sincerity of the registrant in objecting, on religious grounds, to participation in war in any form.' Witmer v. United States, 348 U.S. 375, 381, 75 S.Ct. 392, 396, 99 L.Ed. 428 (1955). The Sixth Circuit, after reviewing *Witmer* and *Dickinson*, said: 'Where, however, the veracity of the registrant is the principal issue, disbelief will suffice. But even in the latter situation, the record must contain some statement of this disbelief if the classification is to be upheld on judicial review.' United States v. Washington, 392 F.2d 37, 39 (6th Cir. 1968). *See also* Witmer v. United States, [348 U.S.] at 382, 75 S.Ct. 392; United States v. St. Clair, 293 F.Supp. 337, 341 (E.D.N.Y.1968). Inconsistent statements or actions or a finding of insincerity may support the denial of conscientious objector status. Parrott v.

United States [(C.A. 9) 370 F.2d 388]; see Witmer v. United States [348 U.S.] at 382, 75 S.Ct. 392. The local board, however, must state the reasons for its denial of a requested classification when a registrant has 'met the statutory criteria' (*Parrott, supra*, [370 F.2d] at 388) for that classification or, in the language of Dickinson, has placed himself 'prima facie within the statutory exemption.' 346 U.S. at 397, 74 S.Ct. at 158. Kessler v. United States, 406 F.2d 151, 156 (5th Cir. 1969). Otherwise a court cannot determine whether a board's denial of a requested classification was based on a belief that the registrant's statements, even if true, did not entitle him to the classification, or on the reasonable disbelief of certain allegations necessary to the registrant's *prima facie* case. United States v. Jakobson, 325 F.2d 409, 416–417 (2d Cir. 1963), aff'd sub nom. United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965); Shepherd v. United States, 217 F.2d 942 (9th Cir. 1954). Batelaan v. United States, 217 F.2d 946 and note 1 (9th Cir. 1954). United States v. St. Clair, *supra*, [293 F.Supp.] at 344, cf. Schuman v. United States, 208 F.2d 801, 805 (9th Cir.)."

There was no such statement of reasons by the Local Board with respect to registrant. As noted above, although SSS Form 110 (Notice of Classification) was referred to by the Board on SSS Form 257 (Notification of Right to Appeal), it was not included in the file. There is no showing that it contained any reasons for the denial of defendant's claim. Although the letter of the Appeal Agent reflects that a copy of that letter was mailed to defendant, it could not have constituted a statement of defects in defendant's conscientious objector claim, both for the foregoing reasons and because it was not made by the Local Board. United States v. Cummins, *supra*.[7]

Some cases contain dicta contrary to the rule enunciated in *Cummins, St. Clair* and other cases that the Local Board or Appeal Board must assign reasons for rejecting a registrant's claim of exemption. But all of those cases were cases wherein the Appeal Board assigned reasons which were legally insufficient. See Gatchell v. United States (C.A. 9) 378 F.2d 287; Owens v. United States (C.A. 10) 396 F.2d 540; United States v. Balderrama (W.D.Tex.) 304 F.Supp. 822. The same cases, however, state the principle (and cite cases which also support it) that the record should be clear respecting "on exactly which grounds the Appeal Board decided." See Sicurella v. United States, 348 U.S. 385, 75 S.Ct. 403, 99 L.Ed. 436; United States v. Stepler (C.A. 3) 258 F. 2d 310, 317. Thus, it seems clear that, in a case like that at bar, where the ground for rejection of the claim of exemption is not clear from the record, the Board must specify a ground for the rejection. As was stated in the very recent case of United States v. Broyles

(C.A. 4) 423 F.2d 1299 (March 19, 1970):

"Where it is clear that a prima facie case was established, we conclude that in conscientious objector cases, it is essential to the validity of an order to report that the board state its basis of decision and the reasons therefor, i. e., whether it has found the registrant incredible, or insincere, or of bad faith, and why. * * *"

In cases in which a basis-in-fact is readily apparent from the record (such as an inconsistency in the registrant's claim), the Board determination may conceivably be upheld, as suggested in United States v. Abbott, *supra*. But when, as in the case at bar, such a basis-in-fact is not readily apparent, the reason must be specified. Sicurella v. United States, *supra*; United States v. Stepler, *supra*. Although the record herein does not show any basis-in-fact for the denial of conscientious objector status, a *de novo* hearing on this issue was granted defendant at the trial of this cause in which evidence was offered which would supply a basis-in-fact for a finding of insincerity. But this Court is limited to consideration of the Selective Service file in reviewing the decision of the draft board to determine whether it is supported by a basis-in-fact, and no basis-in-fact appears in the file for the rejection. For this reason, the decision in this case is consistent with the separate concurrence of Judge Blackmun and the dissent of Judge Mehaffy in United States v. Cummins, *supra* (based upon the record of defendant's opposition to the war for other than religious reasons and inconsistency of his late claim with his earlier statement), as well as with the majority opinion written by Judge Lay finding no apparent basis-in-fact or

7. Further, as the cases state, any statement of defect by the Board would have had to have had a "rational basis." As noted above, no "rational basis" could have been stated. Even a statement of disbelief of one of the elements necessary to state a claim must be, within the requirements of the cases, a "reasonable". disbelief (United States v. Houghton, *supra*) supported by

"some affirmative evidence." Batterton v. United States, *supra*. As noted above, no such evidence is contained in this record in which defendant made a *prima facie* case by his own statements and professions and there were no inconsistencies in defendant's claims. Further, the Board, although empowered under its regulations to do so, did not hold a hearing.

stated reason for the denial. Further, in cases like that at bar in which the Board could reasonably point to no basis-in-fact in the registrant's statement for the rejection, it is obliged to hold a hearing and "build a record" in keeping with the rule of Batterton v. United States, *supra*.

Defendant is therefore entitled to a judgment of acquittal.

It is therefore

Ordered and adjudged that the defendant be, and he is hereby, found not guilty and finally discharged, without prejudice to further proceedings under the Selective Service Act.