Alan I. SILBERBERG, Petitioner,
Appellant,

v.

Commanding Officer, Col. Albert W. WILLIS et al., Respondents,
Appellees.

No. 7500.

United States Court of Appeals
First Circuit.

Heard Jan. 5, 1970.

Decided Jan. 6, 1970.

---

Harvey A. Silverglate, Boston, Mass., for appellant.

Stanislaw R. J. Suchecki, Asst. U. S. Atty., with whom Herbert F. Travers, Jr., U. S. Atty., was on memorandum, for appellees.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

Appellant Silberberg, a law student, and a member of the United States Army Reserve assigned to an army hospital in Massachusetts, but not on active duty, sought administrative discharge on grounds of conscientious objection. In support of his application he submitted a four-page statement describing his religious beliefs, and letters from his dean, who was a member of a clerical order,

and from one of his professors, attesting to the genuineness of those beliefs. In accordance with Army regulations he was interviewed by a chaplain and an army psychiatrist, who submitted reports expressing confidence in his sincerity. His commanding officer, also after an interview, agreed, and recommended approval of the request. Appellant's file was then sent to the Selective Service System for an advisory letter, and an assistant to General Hershey replied, giving no reasons, but stating, "Based on the information contained in applicant's file * * *" applicant would not be classified by that organization as a conscientious objector. No information beyond what we have stated appeared in the file. On this record, and without interviewing appellant personally, the Conscientious Objector Review Board at Fort Benjamin Harrison, Indiana, denied the request for a discharge, concluding, essentially, that he was not sincere. This ruling was upheld by the Convening Authority.

■ Thereafter appellant sought a writ of habeas corpus in the district court. He encountered partial success. The court held that the record contained no basis for questioning his sincerity, and "no substantial evidence supporting the military determination that petitioner was not, within the meaning of the Army's own regulation, a conscientious objector,"[1] and that hence he could not be required to perform combatant service. The court's opinion, dated December 2, 1969, Silberberg v. Willis, 306 F. Supp. 1013, presents a detailed discussion of the documents in the record, which we need not repeat. The court concluded that the army had the option of discharging the applicant or assigning him to noncombatant duty. By this it meant that the applicant could be classified I-A-O, noncombatant duty within the army, as distinguished from a discharge and a 1-O classification, under which he would be eligible for noncombatant service outside the army. The Army having indicated it would not discharge the applicant, he appeals from the district court's refusal to order an outright discharge.

■ The provisions of the Selective Service Act of 1967 dealing with conscientious objectors do not apply to persons already in military service. *See*, *e. g.*, Crane v. Hedrick, S.D.Cal., 1968, 284 F.Supp. 250, 254. However, Department of Defense Directive 1300.6, May 10, 1968, establishes rules governing objectors whose convictions develop after entry. The Directive provides that standards for classification "1-O," or "1-A-O" within the military service, shall be the same as those used by the Selective Service System. ¶ IV(B) (3) (b).[2] Thus, the 1-A-O classification applies to a person who "by reason of religious training and belief, is conscientiously opposed to participation in war in any form." Selective Service Act of 1967, 50 U.S.C.A. App. § 456(j). The 1-O classification applies to a person who meets this test and additionally, is "conscientiously opposed to participation in * * * noncombatant service." *Id.*

■ The district court based its conclusion that the Army need not grant a discharge upon inferences drawn from "petitioner's own application, his written statement, and the testimony he gave before this Court as to his continuing to

---

1. Apart from the fact that appellant's beliefs were alleged to have solidified at the time they did, which is not in itself sufficient, the only questionable matter adverted to by the Board was appellant's somewhat qualified answer indicating that in some circumstances he would use force. We agree with the district court that this answer was insufficiently qualified to contradict his basic position. *Accord*: United States v. Purvis, 2 Cir.,

1968, 403 F.2d 555, 558 n. 7, 563. We do not pause to consider whether the "substantial evidence" standard applied by the court represents a deviation from the "basis in fact" test followed in Bates v. Commander, etc., 1 Cir., 1969, 413 F.2d 475, 477.

2. Hence the significance of the advisory Selective Service letter hereinabove referred to.

perform noncombatant tasks in the Army, even after he filed his petition in this Court * * *." Turning first to the documents, we discover no support for a finding that appellant was not conscientiously opposed to noncombatant duty within the service. His application requests a discharge and states that he would be willing to do alternative civilian work. Nowhere does he intimate that he would be willing to do any sort of military duty, or express any views suggesting that any such would be acceptable. His explication of his beliefs states that "my presence in the United States Army Reserves makes me an accessory to all the actions of the United States Army." The letters from his dean and his professor also allude to appellant's request to do civilian work. Finally, while the three Army interviewers do not refer specifically to his objection to noncombatant duty, they do not suggest any reason to doubt the existence of such an objection.

We do not find this contradicted by appellant's "testimony * * * as to his continuing to perform noncombatant tasks in the Army, even after he filed his petition in this Court." In the first place, it could not be thought that these duties—compulsory weekly Reserve meetings—were so extreme that their performance was necessarily inconsistent with an accompanying belief that they were offensive to the conscience. We note that DoD Directive 1300.6 requires that "[p]ending decision on the case and to the extent practicable the person will be employed in duties which involve the minimum conflict with his asserted beliefs." VI(B) (2). Even strong convictions can co-exist with a yielding to authority. We would be reluctant to hold that a citizen must engage in civil disobedience or risk having doubt cast upon his convictions, and doubly reluctant to impose upon the Army a rule encouraging self-help by members in service.[3]

■ Of far more importance, in taking testimony and basing its decision in part upon its own appraisal of the applicant, the court undertook authority which did not belong to it. As we pointed out in Bates v. Commander, etc., *supra* n. 1, at 477 n. 2, "the court's review is limited to the evidence which was before the [military agency] and upon which it acted. *See* Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59 (1947); Hammond v. Lenfest, 398 F.2d 705 (2d Cir. 1968)." The court did not have before it a claim that appellant, regardless of statute or regulation, had a constitutional right to a discharge. In such a case it might have been proper to take evidence on the nature of appellant's religious objections. Here, however, appellant claimed that the military agency broke its own regulations by finding, without a basis in fact, that he was not an objector. In-court testimony was not germane to this claim.

Reviewing the administrative record we find no basis for distinguishing between 1-A-O and 1-O status.[4] Agreeing, as we do, with the district court that as a matter of law appellant was entitled to a bona fide conscientious objector status, he was entitled to have recognized the views that he professed, not some other. United States v. Washington, 6 Cir., 1968, 392 F.2d 37.

We turn to an issue not reached by the court, whether the Army is compelled to discharge a person entitled to 1-O status. The Army's own implementing

---

3. It is argued that a few of the drills were on dates beyond appellant's minimum requirements. Having in mind the difficulties appellant might have found himself in had he been wrong as to his requirements, *cf.* Bates v. Commander, etc., *supra* n. 1, this is too weak a reed on which to base a finding. So is the fact that appellant signed a document acknowledging his Reserve commitments. Part of those were the Army's corresponding obligations to him.

4. The single matter referred to in n. 1, *supra*, has no bearing whatever on this aspect of the case.

regulations are unclear on this point,[5] and the matter of discharge is ultimately controlled by two sections of DoD Directive 1300.6:

> "Persons determined by a Military Department * * * to meet the criteria for 1-O classification will normally be discharged 'For the convenience of the Government.'" ¶ VI (C) (1).

> "Persons * * * with less than one hundred and eighty (180) days' service who are determined to be bona fide conscientious objectors (1-O classification) and whose request for separation is made early enough so that discharge will occur prior to completion of one hundred and eighty (180) days' active duty will be separated (for the convenience of the Government by reason of conscientious objection) early enough to permit the remaining service in the civilian work program administered by Selective Service." ¶ VI(C) (2).

It is not entirely clear whether discharge is to occur automatically for a 1-O with less than 180 days' service, or whether ¶ VI(C) (2) is qualified by the caveat in ¶ VI(C) (1) that a 1-O will "normally" be discharged in the manner prescribed. Nor is it clear whether the qualification goes to the reason to be stated for the discharge or to the right to a discharge itself. Assuming the latter, however, it is clear that a discharge is to be granted in the absence of extraordinary or abnormal circumstances.[6]

▆ In this case the Board did not base its refusal to discharge upon military necessity or other abnormal circumstances. Its decision was based upon groundless doubts about appellant's sincerity and the religious nature of his beliefs. We must review the decision actually rendered, not the decision as it might have been on other facts. Hammond v. Lenfest, 2 Cir., 1968, 398 F.2d 705, 715–716; Crane v. Hedrick, *supra*, 284 F.Supp. at 255.

▆ On the basis of the record before us, we conclude that appellant was entitled to a discharge. *Cf*. United States ex rel. Healy v. Beatty, S.D.Ga., 1969, 300 F.Supp. 843.

▆ The matter presently before the court is that of a stay pending appeal. We see no reason, the matter having been fully briefed and argued, why we cannot decide the ultimate merits, as we have done on other occasions. *Cf*. Keefe v. Geanakos, 1 Cir., 11/12/69, 418 F.2d 359. We do, finally, decide that appellant is entitled to a ruling that he should be discharged with a 1-O classification, to be subject to the civilian work to which he has stipulated. There is, however, one loose end. The Army questions the jurisdiction of the district court. The court resolved that issue against it. If the Army decides to appeal that issue, it may do so, and we will enter an order as to the record and dates for filing briefs. Only a temporary injunction will issue until that matter has been disposed of.

---

5. Army Regulation 135–25, dated April 11, 1969, provides that
   "When authorized by Headquarters, Department of the Army, individuals who have been determined to be bona fide conscientious objectors with classification 1–O will be discharged for the convenience of the Government * * *." ¶ 9(a).

6. Perhaps the stated qualification is intended to make discharge procedures consistent with the Directive's announced policy to "recognize" conscientious objection "to the extent practicable and equitable." ¶ IV(B).