**Bruce James HOLICKY, Plaintiff,**

v.

**SELECTIVE SERVICE LOCAL BOARD NO. 3, DENVER, COLORADO, et al., Defendants.**

**Civ. A. C–3123.**

United States District Court, D. Colorado.

June 28, 1971.

Hemminger, McKendree, Vamos & Elliott, P. C., by Richard D. Greengard, Denver, Colo., for plaintiff.

James L. Treece, U. S. Atty., by Gordon L. Allott, Jr., First Asst. U. S. Atty., Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

ARRAJ, Chief Judge.

Plaintiff, a Colorado resident, is about to be inducted into the Army. He brought this action, pursuant to 28 U.S. C. §§ 1331, 1361, 2201, 2202, seeking both a declaration that the order to report for induction is invalid and temporary and permanent injunctions restraining defendants from acting upon the order. This court issued a tempo-

rary restraining order and then received briefs and heard argument on whether a preliminary injunction should be granted. Defendants maintain that this court lacks jurisdiction of the subject matter and of plaintiff's local Selective Service board and that plaintiff is not entitled to the relief sought. These questions are before us for final disposition.

Uncontradicted evidence adduced at the hearing indicates the following: plaintiff received an order from Selective Service Local Board No. 11, Berwyn, Illinois, to report for induction into the Armed Forces on August 21, 1969. In response to a letter from plaintiff requesting an extension of time to complete a summer session at the University of Denver College of Law, the Berwyn board, acting upon authority from the Illinois director of Selective Service, granted a postponement of induction until the first call on the Berwyn board after August 30, 1969. By letter dated September 17, the board ordered plaintiff to report for induction on October 28 and plaintiff again sought a postponement, this time as a full-time graduate student. The Berwyn board, after receiving authority from the state director, further postponed induction until the first call after December 31, 1969. After the submission of a certificate from the law school attesting that plaintiff had entered his second year and was expected to graduate in June, 1971, the Berwyn board notified plaintiff, by letter dated October 22, 1969, that induction had been postponed until the first call after "30 June 1969." This date was later corrected to read "30 June 1970."

In June, 1970, the Illinois headquarters asked for plaintiff's file and on March 11, 1971, the state office returned the file with the instruction that plaintiff be reordered to report for induction. The Berwyn board ordered him to report on April 20. Plaintiff took issue with the validity of the outstanding order to report for induction and also asked for and received a transfer of induction to Local Board No. 3, Denver, Colorado.

Before he could be inducted plaintiff launched this action claiming that the Berwyn board's failure to induct him on the first call after June 30, 1970, and the subsequent delay amounted to an indefinite postponement of induction in violation of Selective Service regulations. Plaintiff argues that this indefinite postponement renders the original order to report for induction null and void and that he must now be drafted in accordance with the random selection system which went into effect on January 1, 1970. 32 CFR § 1631.

■ We have concluded that we may not consider the merits of plaintiff's claim. We are persuaded that we lack in personam jurisdiction of plaintiff's local board and that the board is an indispensable party without which it would be inappropriate to exercise jurisdiction. For this reason we find it unnecessary to reach the question whether pre-induction review is appropriate in the circumstances of this case. Cf. Breen v. Selective Service Local Board No. 16, 396 U.S. 460, 90 S.Ct. 661, 24 L. Ed.2d 653 (1970); Oestereich v. Selective Service System Local Board No. 11, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968).

■ Plaintiff concedes that, in the absence of a statute authorizing extraterritorial service of process, the service in this case upon the Berwyn board was invalid because beyond the boundaries of Colorado. Federal Rule of Civil Procedure 4(f). He argues, however, that since he is a résident of Colorado and since the Berwyn board is an agency of the United States, 28 U.S.C. § 1391(e) (Supp.1971) authorizes such extraterritorial service:

(e) A civil action in which each defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, may, except as otherwise provided by law, be brought in any judicial district in which: (1) a defendant in the action

resides, or (2) the cause of action arose, or (3) any real property involved in the action is situated, or (4) the plaintiff resides if no real property is involved in the action.

The summons and complaint in such an action shall be served as provided by the Federal Rules of Civil Procedure except that the delivery of the summons and complaint to the officer or agency as required by the rules may be made by certified mail beyond the territorial limits of the district in which the action is brought.

At first glance the language of this provision does indeed appear to support plaintiff's position but further consideration reveals numerous difficulties. For example, chapter 87 of title 28 is denominated "District Courts; Venue" and the title of 1391 is "Venue generally." Thus, while the wording of 1391(e) indicates that Congress intended to expand our in personam jurisdiction, the titles of both chapter and section suggest that subsection (e) is merely a venue provision. The legislative history of 1391(e) resolves this difficulty in plaintiff's favor; Congress did intend to expand the reach of federal trial courts. However, that same legislative history also rather strongly suggests that our reach does not extend to agencies such as local Selective Service boards. Both the Senate and House reports state that the purpose of subsection (e)

> is to make it possible to bring actions against Government officials and agencies in U. S. district courts outside the District of Columbia, which, because of certain existing limitations on jurisdiction and venue, may now be brought only in the U. S. District Court for the District of Columbia. 1962 U.S.Code Cong. & Adm.News, pp. 2784–85.

Throughout the reports the committees emphasize that to require citizens, who seek to compel a supervisory official or agency head to perform a duty of office, to travel to the official's place of residence, with few exceptions the District of Columbia, is an "unfair imposition upon citizens who seek no more than lawful treatment from their Government." *Id.* at p. 2785. The committees also envisioned that the proposed legislation would reduce congestion in the District of Columbia courts and would enable judges more familiar with problems of regional or local concern to handle such problems. *Id.* at p. 2786. Nowhere in the reports do the committees even hint that the purpose of 1391(e) would be served by permitting citizens to sue essentially local, albeit federal, agencies in any district in which those citizens reside. Had it considered a situation such as the one before us, Congress might well have concluded that local draft boards would be unfairly burdened if forced to defend lawsuits by registrants, no matter where residing. At the restless age of majority, registrants are apt to be scattered far and wide. The most plausible view of what Congress intended is, we think, that citizens may bring suit elsewhere than in the District of Columbia against officials of national, but not merely local, stature, at least in those cases in which the legal issue is not one of regional concern and the subject matter is not land located in the district in which the action is brought. Plaintiff cites numerous cases which purportedly support his view, but none, so far as we can tell, deals with the issue presented here. Liberation News Service v. Eastland, 426 F.2d 1379 (2d Cir. 1970); Smith v. McNamara, 395 F.2d 896 (10th Cir. 1968); Macias v. Finch, 324 F.Supp. 1252 (W.D.Cal.1970); Silberberg v. Willis, 306 F.Supp. 1013 (D.Mass.1969) rev'd on other grounds, 420 F.2d 662 (1st Cir. 1970); Clausell v. Turner, 295 F.Supp. 533 (S.D.N.Y.1969); Metz v. United States, 304 F.Supp. 207 (W.D. Penn.1969); Brotherhood of Locomotive Engineers v. Denver & Rio Grande Western Railroad Co., 290 F.Supp. 612 (D.Colo.1968); Powelton Civic Home Owners Association v. Department of Housing & Urban Development, 284 F. Supp. 809 (E.D.Pa.1968).

1376

Since we lack in personam jurisdiction of the Berwyn, Illinois, board and extraterritorial service of process cannot be effective, the question remains whether the board should be regarded as an indispensable party whose absence requires that this action be dismissed. Rule 19(b) of the Federal Rules of Civil Procedure states that if a person described in subdivision (a) (1)–(2) of the rule cannot be made a party to the action the court must determine, taking into account the factors enumerated in 19(b), whether "in equity and good conscience the action should proceed" or should be dismissed. Unquestionably, 19(a) (1) applies here; we cannot grant complete relief without the Berwyn board. This is because plaintiff was transferred to a Denver draft board solely for the purpose of induction and, while we could order the Denver board not to deliver plaintiff for induction on the basis of an invalid order to report, *cf.*, 32 CFR § 1632.9(g), the effect of such an order would merely be to place plaintiff back in the hands of the Berwyn board. *Id.* § 1632.9(i). Prior to March 12, 1971, it is true, prospective inductees did have some right to obtain a transfer for the purpose of induction. *Id.* § 1632.9. However, on that date, President Nixon promulgated Executive Order 11586 rescinding section 1632.9 and, in effect, abolishing transfers for induction. 36 Fed.Reg. 4751 (1971). Thus, if the Denver board is rendered powerless to deliver plaintiff for induction, his file will return to Berwyn, which is perfectly free to induct plaintiff in Berwyn, the location specified in the original order to report for induction. *Id.* It would seem of no avail for plaintiff to maintain that since he was in fact transferred to Denver for induction he is entitled to the benefit of the now-rescinded section 1632.9 and the Berwyn board may not have him inducted except in Denver, so long as he remains a Denver resident. Even conceding that transferees prior to the effective date of the executive order are entitled to the continuing benefit of the re-

scinded regulation, plaintiff did not apply for his transfer until April 13, 1971. The Denver board approved it on that same date and the Berwyn board on April 26. It may be that both draft boards acted beyond the scope of their authority in granting plaintiff's transfer request since it appears that only the director of Selective Service may now authorize such transfers, 32 CFR § 1632.10, *as amended*, 36 Fed.Reg. 4751 (1971), but, in any event, the Berwyn board ought not to be considered bound by an act which at the most was a gratuity.

In addition, the fact that the director of Selective Service is a defendant in this lawsuit does not enable this court to issue an order which would bind the Berwyn board. *Cf.* Becker v. Hershey, 309 F.Supp. 487 (D.Conn.1969). We can find nothing in the regulations which confers upon the director a general power to cancel orders to report for induction. A written request from a state or the national director to reopen a registrant's classification does cancel an outstanding order, 32 CFR § 1625.3(a), and either a state or the national director may order a postponement of induction, *id.* § 1632.2(a), but such action does not work a cancellation of the order. *Id.* § 1632.2(d). For these reasons we conclude that any relief we might grant in the instant action would be incomplete.

Since the Berwyn board is a party which should but cannot be joined in this lawsuit, we must decide whether "in equity and good conscience" we should go forward or whether the absent party should be considered indispensable. The first two factors enumerated in 19(b) favor retention of jurisdiction: since we cannot issue an order which would diminish the Berwyn board's freedom of action, a judgment rendered here could not prejudice the absent party. On the other hand, analysis of the second two factors favors dismissal of this suit. For the reasons explained above, we are powerless to render a judgment which would provide plaintiff with more than a token

victory. In addition, were the action here dismissed, plaintiff would have an adequate remedy in Illinois. This last factor may itself be sufficient to make dismissal appropriate. *See, e.g.*, McKenna v. Udall, 135 U.S.App.D.C. 335, 418 F.2d 1171 (1971). Even if insufficient in itself, it is clear that a federal court in Illinois could grant far more effective relief than could this court, and it would seem a waste of the energies of both the litigants and the court to go through with a lawsuit whose final product could be nothing more than an ineffective order. We also note that plaintiff is a law school graduate represented by counsel and we have no doubt that he will continue to pursue the Selective Service with the vigor he has thus far displayed.

For the foregoing reasons, it is

Ordered that the instant action be and the same hereby is dismissed, without prejudice, due to the absence of an indispensable party.